UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JOSEPH LEE BEAN,<br>TDCJ 1141587,<br><br>   Plaintiff,<br><br>v.<br><br>DAVID SWEETIN, *ET AL.*,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION H-10-5089<br>§<br>§<br>§<br>§ |

## Opinion on Dismissal

Joseph Lee Bean, a Texas prisoner, sues prison officials for civil rights violations. 42 U.S.C. § 1983. He sues Warden David Sweetin, Assistant Warden Christopher Carter, and Major Donald Muniz. Bean is proceeding as a pauper. 28 U.S.C. § 1915.

1. *Claims*

Prison officials placed labels in Bean's file that put his life in danger. They gave him these labels: communist, terrorist, homosexual, member of a folk nation, gang member, and drug dealer. Bean told Carter that all of the labels are wrong.

Bean's explanation on how prison officials derived the labels follows. Officials labeled him a Communist because another prisoner said Bean had stated that he disagreed with the government. Prison officials labeled him a terrorist because Bean had been a Muslim at another unit. Prisoners stole a letter from Bean which they mailed and made it appear that Bean mailed the letter. This was done while the U.S. still had troops putting Iraq back together. During the Iraq war, other prisoners tried to get relief from courts and used Bean to steal money from the courts. Prison officials implicated Bean in these frauds on the courts.

Before he came to prison, Bean had been well known in Houston because he was a Christian clergyman who later became a Muslim and had his name placed on a national entertainer list. Bean's name was also listed on a national volunteer roster as a member of Serve Houston Youth Corps. Prison officials put the terrorist label on Bean so they could investigate him and his family.

Bean was labeled a homosexual because a Muslim tried to hurt him. During a prison hearing,

Warden Jones told Bean he would not help him unless he said he was a homosexual. Bean told Jones that he was gay. Jones became excited and stated "why didn't you say so in the first place, you are segregation material now. I'm going to grant this hearing, give you a lawsuit, and transfer you."

Prison officials labeled Bean a member of a folk nation because prisoners had taken his name and said he was part of the folk-nation prison family. This label was used so that they could identify Bean as part of the folk nation and the folk nation could control Bean. Prison officials labeled Bean a gang member because they said he, along with other inmates, had assaulted a guard. Officials labeled Bean a gang member so that guards would not respect Bean. Prison officials labeled Bean a drug dealer because prisoners said he was using and selling drugs. This, however, was not true. Guards were surreptitiously putting marijuana in his cell and plotting against him.

Medical staff, guards, and other prisoners tried to hurt or kill Bean. Often on the Stringfellow Unit, other prisoners tried to kill Bean by dropping unknown substances in his food. Prisoners also went into his cell and sprinkled poison in his cookies, coffee, and chips. Once, Bean grabbed his cup and discovered it had substances laced around the top of the cup. Medical staff, guards, and inmates tried to hurt or kill him many times.

2. *Relief Sought*

Bean asks this court to order the prison to remove the labels in his prison files, transfer him to another unit, promote him to a different classification, remove the blocks on his prison account, give him better law library sessions, test his food, and give him medical treatment outside the prison. Bean offers the following on why he needs the equitable relief he seeks in his complaint. They should remove the labels because the labels are wrong. Prison officials are mistreating him because of these incorrect labels. Bean seeks a unit transfer because officers are writing false disciplinary cases against him. Officials recently moved Bean to another unit.

Bean seeks a promotion in his classification status because prison officials listed his name as part of the Islamic community and therefore they could not house him on closed custody or administrative segregation. These labels resulted in disciplinary cases and retaliation. The holds on his account, which arose from the labels, prevent money from being deposited into his account. Bean requests ten hours a week in the law library because the labels in his prison file affect his ability to litigate. Finally, Bean requests food testing because his food has come in contact with unknown substances, poisons, and chemicals. Bean has found his name on diet trays where someone

had mixed unknown substances in the vegetables to cover the taste.

3. *Spears hearing*

The court held a hearing under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) on November 15, 2011. (18, 20). The court asked Bean whether he was still in danger or felt in danger. *Spears* Hearing Transcript, p. 6. (Tr. 6)  Bean said yes, but only as to food. *Id.*  He said that "the food is something that they can't stop from coming in contact with." *Id.*  A prison warden testified at the hearing that the only label in Bean's prison file is that he is a drug user or drug dealer. (Tr. 6-7)  The warden said that Bean had trouble with other prisoners in the past, but that they had been separated. (Tr. 7)

Under later questioning, the warden again said that Bean had no labels in his prison file other than the drug user or dealer label. (Tr. 8)  The court allowed Bean to make any followup or additions to his testimony. (Tr. 8)  In response, Bean said only that he had made a complaint to the Classification Committee at his new unit about his religious beliefs not being respected. (Tr. 9)  At the hearing, Bean did not dispute the Warden's statement that the only label in his file concerned drugs. (Tr. 8-9)  Under Bean's testimony at the hearing, his only active problem is food. (Tr. 6)

4. *Analysis*

Most of Bean's claims are fantastic and delusional. These claims have no arguable basis in fact and are not recognized at law because of their delusional nature. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (allegations that are fantastic or delusional lack an arguable basis in fact). These claims are subject to dismissal. 28 U.S.C. § 1915A(b)(1).

The only live issue under Bean's claims is his statement that guards cannot stop others from coming in contact with his food. Bean does not seek damages. The only relief he seeks is an order for the prison to test his food.

This court does not run the Texas prison system. The federal courts should not "substitute [their] judgment on the difficult and sensitive matters of institutional administration ...." *Block v. Rutherford*, 468 U.S. 576, 588 (1984). For this court to intrude in the day to day operation of a state prison by ordering officials to test a prisoner's food requires the "most extraordinary circumstances." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976).

There are no extraordinary circumstances here. Bean raises mostly delusional claims and there are no concrete facts before the court which justify an order for food testing. The court must

3

take into account the interests of state authorities in managing their own affairs. *Milliken v. Bradley*, 433 U.S. 267, 28-81 (1977). The consideration of the principles of federalism further restricts the granting of injunctive relief by a federal court against a state governmental entity. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975). Under these considerations, Bean's request for injunctive relief must be denied.

5. *Conclusion*

Bean fails to state a claim on which his requested relief may be granted. The Clerk will send a copy to the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793 by facsimile transmission, regular mail, or e-mail; and to the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Three-Strikes List, by regular mail or e-mail.

Signed __March 15__, 2012, at Houston, Texas.


Lynn N. Hughes
United States District Judge